[Civ. No. 2650. Second Appellate District, Division One.—June 27, 1919.]

## AUGUST VOLLMER et al., Respondents, v. ALFRED A. WHEELER, Appellant.

[1] REFORMATION OF CONTRACT—DISCOVERY OF FRAUD AND MISTAKE—INSUFFICIENCY OF COMPLAINT.—Where the complaint in an action for the reformation of a contract on account of alleged mistake and fraudulent representations made by defendant is silent as to when the fraud and mistake, on account of which it is sought to reform the contract, was discovered, it is subject to demurrer.

[2] ID.—DELAY OF FIVE YEARS—STATUTE OF LIMITATIONS.—Where the plaintiffs in such action had discovered the fraud and mistake more than five years prior to the commencement of the action for the reformation of the contract, the action was barred by the statute of limitations, and the court, on the trial thereof, erred in receiving parol evidence introduced touching the question of the reformation of the contract.

[3] PARTITION—PROPERTY HELD UNDER JOINT SALE AGREEMENT—EQUITY.—In an action in partition by the owners of an undivided three-fourths interest in a tract of land, if a partition cannot be made without great prejudice to the joint owners, a court of equity may decree a sale of the property, notwithstanding the property is held under an agreement that a sale and conveyance shall only be made by all the parties uniting in a joint transfer thereof and the defendant, the owner of the other one-fourth interest, refuses to join therein.

APPEAL from a judgment of the Superior Court of San Luis Obispo County. Thomas A. Norton, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

W. H. Spencer and C. P. Kaetzel for Appellant.

Wm. Shipsey, S. V. Wright and Chas. F. Blackstock for Respondents.

SHAW, J.—In this action plaintiffs sought a decree for the partition by sale of certain real estate described in the complaint, of which they and defendant were owners as tenants in common. The court upon trial granted the interlocutory decree prayed for. Thereafter defendant moved for a new trial, which was denied, and the appeal is from that order.

It appears from the original complaint filed, and upon which and the answer thereto the case was tried, that plaintiffs, being the owners of the property, conveyed to defendant an undivided one-fourth interest therein upon an agreement that he held the same subject to plaintiffs' right to the rents, issues, and profits derived therefrom until a joint sale thereof was made, at which time plaintiffs were to have and receive from the proceeds of such sale ten thousand two hundred dollars, and that defendant was to have and receive one-fourth of the excess over and above said sum of ten thousand two hundred dollars. In his answer, defendant alleged that he was and had been since February, 1901, the owner in fee simple absolute of an undivided one-fourth interest in the property and entitled to the rents, issues, and profits therefrom, all of which since said date had been collected and appropriated by plaintiffs, and, upon allegations that the property could be partitioned in kind, asked for a decree accordingly.

Over defendant's objection, the court permitted plaintiffs to introduce much evidence wholly outside of and not pertinent to the simple issues joined, by reason of which fact plaintiffs, at the close of the trial, by leave of court, filed an amended complaint to conform thereto. The amended complaint contained two counts. In the first count thereof, in addition to the matters contained in the original complaint, it was alleged that, to evidence the agreement made between the parties, defendant made and delivered to plaintiffs his written agreement, as follows:

"San Luis Obispo, Cal., February 12th, 1901.
"To Messrs. August Vollmer, William F. Wood and Robert
   B. Edmondson:

"In the event that petroleum in paying quantity should
not be found on some part of the following tract of land,
which has been bought by you at my suggestion, to-wit: the
townsite of El Moro conveyed by the County Bank, the 161
acres bought of L. W. Booker, the 440 acres bought of
Allen Foster and the Tide lands in Morro Bay granted by
the State of California, then I hereby agree, that in any
sale made by us *jointly* of our respective undivided quarter
interests in said lands, no proportionate division of the
proceeds of such sales shall be made to me until you shall
have each received the sum of three thousand four hundred
(3400) dollars, which has been contributed by each of you
to the total purchase price. The surplus, if there be any,
over and above the sum total of $10200.00 shall then be
divided share and share alike between all four of us. It
is clearly understood that this agreement shall take effect
only in the event that the petroleum (or other hydro car-
bons) in paying quantity shall fail to be discovered on some
part of the aforesaid lands. Time is not of the essence of
this agreement.

                              "ALFRED A. WHEELER."

Followed by an allegation as follows: "That said agree-
ment Exhibit 'B' was then and there intended to mean,
was then and there represented by defendant to plaintiffs
to mean, and was then and there understood by plaintiffs
to mean, and did mean that there should be no sale of said
lands by any of the parties to this action otherwise than
a joint sale; that in case petroleum or other hydro carbons
in paying quantity should fail to be discovered on said
lands prior to a sale thereof defendant should receive no
part of the rents, issues, and profits of said land until such
sale (nor until the discovery of oil or hydro carbons in
paying quantity thereof, if such oil or hydro carbons in
paying quantity should be discovered thereon); and should
likewise receive no part of the selling price of said lands
until plaintiffs had been reimbursed therefrom the sum of
ten thousand two hundred dollars paid by them as the
purchase price of said lands; but that in the event that
petroleum or other hydro carbon substances in paying

quantity should be discovered on said lands then and from that date defendant should have a full one-fourth interest in and to said lands''; and that no oil or hydro carbon substances had been discovered on the land.

By the second count of said amended complaint, plaintiffs alleged facts upon which they asked for the reformation of said contract on account of alleged mistake and fraudulent representations made by defendant. In answer to the first count of the amended complaint, defendant admitted the execution of the agreement; alleged that no other agreement was ever made, and that he was the owner of a one-fourth interest in said land and entitled to the rents, issues, and profits thereof, from February 11, 1901, which rents, issues, and profits plaintiffs collected and appropriated to their own use and made no accounting thereof to him; that the real estate was susceptible of partition in kind, and prayed that an accounting be had. And in answer to the second count of said amended complaint, defendant alleged, among other things, that said cause of action for the reformation of said written contract is barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure.

As to plaintiffs' right to have the contract revised, the court, upon evidence admitted, found in their favor, namely, that in case oil was not discovered upon the land prior to a sale thereof, plaintiffs should have the rents, issues,. and profits derived therefrom to the time of such sale. In so finding and thus reforming the instrument the court erred. Section 338 of the Code of Civil Procedure enumerates the kinds of actions which must be commenced within three years, and subdivision 4 of said section is as follows: "An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." [1] The complaint is silent as to any allegation showing when the fraud and mistake, on account of which it is sought to reform the contract, was discovered, and, therefore, since it failed to show such discovery within three years prior to the bringing of the action, it was obnoxious to the demurrer interposed. (*Simpson* v. *Dalziel*, 135 Cal. 599, [67 Pac. 1080]; *Castro* v. *Geil*, 110 Cal. 292,

[52 Am. St. Rep. 84, 42 Pac. 804].)   [2] Moreover, it conclusively and affirmatively appeared from the evidence that plaintiffs discovered the fraud and mistake set up in the second count of the complaint more than five years prior to the commencement of the action, at which time they brought an action for reformation of the contract by filing a complaint substantially in the form of the second count of the amended complaint here under consideration, which action was thereafter dismissed for want of prosecution. The action for reformation of the contract was, therefore, barred, from which fact it follows that all parol evidence introduced touching the question of the reformation of the contract was incompetent, and for that reason the court erred in receiving it.

To our minds, the terms of the contract are plain and free from ambiguity. Whether construed according to its terms or in the light of the circumstances surrounding the making of the same, it should be interpreted in accordance with the plain import of the language used therein. The facts are that defendant, who appears to have been recognized by plaintiffs as an oil expert, held options to purchase the property; that in consummating the purchase plaintiffs furnished the money therefor, amounting to ten thousand two hundred dollars. The deeds were taken in the name of Vollmer, who conveyed to each of his coplaintiffs a one-fourth interest and to defendant a one-fourth interest, which conveyance so made to the latter was subject to the sole and only condition that if oil in paying quantities was found upon the property, he was to own the one-fourth interest absolutely and free from obligation to pay any sum of money on account of the purchase thereof. But the discovery of oil was prospective only. The land, besides larger tracts, comprised several hundred small town lots, and, owing to the difficulty of dividing it in kind, an advantageous sale thereof could only be made *en masse*. It is apparent that not only on this account, but for the reason that since no transfer could be made without their participation, such provision would protect plaintiffs for and on account of the money advanced to defendant. Hence, the purpose of the parties is clearly that in the event that oil was not discovered, a sale of the property should only be made by all of the parties uniting in a

conveyance of the property as a whole. Not only does the contract restrict the parties to joint action in making a sale, but, as we understand counsel, they agree that such was their intent, and, as thus construed, since no sale was made, all the parties appear to have acted in accordance therewith.

Since by virtue of the conveyance by Vollmer to defendant the latter was the owner of a one-fourth interest in the property, subject solely and alone to the payment to plaintiffs of the sum of ten thousand two hundred dollars derived from the proceeds of the sale of the entire property, it follows, in the absence of any provision transferring his right thereto, that he was and is entitled to his proportionate share of the rents, issues, and profits derived from the use of the property up to the time of making a sale thereof. The land was acquired in 1901. It is conceded that no oil has ever been discovered thereon. [3] Nevertheless, appellant insists, that, since by the agreement it was provided that a sale and conveyance of the same should only be made by all of the parties uniting in a joint transfer thereof, no sale can be made because he refuses to join therein. We are not in sympathy with this contention. The statute (Code Civ. Proc., sec. 752) provides that cotenants and owners of an estate such as the one here involved may have an action for a partition thereof, or where it appears that a partition cannot be made without great prejudice to the owners, the court may decree a sale of the property. We concede that there may be exceptional cases where a court of equity would, upon grounds in the nature of estoppel, be justified in refusing to partition property, such as the cases of *Hunt* v. *Wright,* 47 N. H. 399, [93 Am. Dec. 451], and *Avery* v. *Payne,* 12 Mich. 549. No facts, however, are made to appear in this case constituting an exception to the rule declared in the section quoted as to a partition of the property, and since, owing to its condition, it cannot without prejudice to the parties be made in kind, a sale thereof is necessary. There is nothing in the contract showing a waiver on the part of plaintiffs to exercise their right to a partition, and since the order is for a sale of the entire interest, it would, though as to defendant involuntary, constitute a joint sale of the property by order of a court

of equity, which, notwithstanding the existence of an agreement made by co-owners that the property should never be partitioned, will disregard the same unless supported by some fact other than the mere compact of the parties. (Freeman on Cotenancy and Partition, sec. 442.)

The judgment, in so far as it decrees a partition of the property by sale thereof, is affirmed. In so far as it purports to revise the contract, it is reversed, and a new trial is ordered only as to defendant's right to have an accounting of the rents, issues, and profits derived from the use of the property by plaintiffs.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1919.

All the Justices concurred.