[Civ. No. 3479. Fourth Dist. Oct. 16, 1947.]

VENTURA MORENO, Respondent, v. WILLIAM A. BLINN et al., Defendants; VENTURA GARCIA et al., Appellants.

Ibanez & Snider and Richard A. Ibanez for Appellants.

Charles D. Warner for Respondent.

BARNARD, P. J.—This is an action for specific performance. On October 15, 1938, Blinn leased 30 acres of farm land to the plaintiff for a term of six years, expiring October 15, 1944. The lease contained a clause giving Blinn "permission to sell said property, but giving tenant first right to purchase." The tenant was also given the right to remove, at the expiration of the lease, any improvements placed thereon by him. The lease was recorded, and the plaintiff went into possession. In developing a dairy, he placed improvements worth $3,500 on the property.

In February, 1943, Blinn sold seven of the 30 acres to a third party. Before making this sale Blinn took the matter up with Moreno and obtained from him a modification of the lease and also a quitclaim as to any rights in the seven acres. In April, 1943, Moreno called on Blinn's attorney and inquired what price Blinn would accept for the remainder of the property. On May 1, 1943, this attorney wrote Moreno that Blinn would accept $7,500. Nothing further was done with this but in the latter part of October or early part of November, 1943, the Blinns sold and conveyed the property to the defendants Garcia for $4,500. The conveyance was a straight deed which was not made subject to the plaintiff's lease. It was conceded

that the Garcias had actual as well as constructive notice of the terms of the plaintiff's lease. Shortly after this conveyance was made and some time in November, 1943, the plaintiff inquired of Blinn's attorney as to whether the place had been sold. The attorney replied that he did not know but would find out. Early in January, 1944, the plaintiff first learned, as a fact, that the place had been sold to the Garcias. On February 8, 1944, the plaintiff served written notice and tender on Blinn and Garcia, offering to pay $4,500 as the price which they had fixed on the property and notifying them that, in any event, he desired to exercise his option and purchase the property. After the sale the plaintiff paid the rent, as it came due, to Garcia.

The date on which this action was brought does not appear but the third amended complaint was filed on January 22, 1945. Blinn and his wife were joined as defendants, but both having died before the trial the action was dismissed as to them. The court found in all respects in favor of the plaintiff and judgment was entered in his favor providing that he should deposit $4,500 in court, that the defendants Garcia should convey the property to the plaintiff, receiving the $4,500, and reserving jurisdiction to enter such further judgment as might be necessary in order to obtain a full conveyance of the property to the plaintiff. From this judgment the defendants Garcia have appealed.

█ It is first contended that the respondent's right to purchase this property was contingent and never came into existence. It is argued that the lessor had the right to sell the property subject to the lease, irrespective of the option clause; that the option clause was intended to apply only in the event the lessor desired to sell and at the same time terminate the lease; that this was not done; and that the respondent was allowed to remain on the property until the expiration of his lease. In support of this contention certain cases from other states are cited.

In making these contentions, several important elements are overlooked. Another interpretation of the lease is possible and plausible. The lease was recorded shortly after it was made, and it was not necessary to give the respondent an option to buy in order to protect his rights for the term of the lease. The option to buy was intended to mean something, it was not necessary in order to protect the respondent's possession during the term of the lease, and there is nothing

in the record to show it was limited to that purpose. The language used would indicate that he was given an unlimited right to purchase the property if the lessor decided to sell. Not only is this a reasonable interpretation, but it is supported by the acts and conduct of the parties. When the first seven acres were sold, earlier in 1943, the lessor was careful to get from the respondent not only a written release of his right to farm the seven acres, but also a quitclaim. On principle, and on the facts, this case cannot be distinguished from the case of *Wilson* v. *Brown*, 5 Cal.2d 425 [55 P.2d 485], where evidence as to the intention of the parties was held to be controlling.

A further consideration is that when the Blinns sold to the Garcias their deed was not made subject to the respondent's lease. The property was sold outright, the conveyance did not mention the lease or the respondent's rights thereunder, the respondent was not informed of the sale until it had been completed, he was not given an opportunity to purchase the property, and the fact that the new purchasers later elected to allow him to remain on the property could not be controlling. The lessor attempted to sell without a reservation as to the lease rights, and, under any view, the right to exercise the option came into existence.

It is next contended that the respondent's right to purchase the property, if any, was not divisible and that specific performance will not lie to enforce the sale of a portion of the property covered by an option. This contention is without merit. The original lease was modified by written agreement between the parties on February 22, 1943, eliminating the portion sold to the third party from the terms of the lease. Having so agreed, the full terms of the lease remained applicable to the remaining portion.

It is next argued that the respondent's option to purchase was void because the lease was not signed by Mrs. Blinn as a coowner of the leased property. Blinn and his wife were joint owners of the property. There is ample evidence that Blinn was acting as agent for his wife in making the lease, that she knew the facts, and that she confirmed his actions in that regard. Aside from several other pieces of evidence, all but one of the receipts for the rent which are in evidence, were signed by Mrs. Blinn. Moreover, no such objection was ever raised by Mrs. Blinn and the appel-

lants are in no position to raise such a claim in their own behalf.

■ Some contention is made that the right given to the respondent to purchase the property is too uncertain to be specifically enforced. The objection seems to be that the purchase price was not named. The respondent was given the first right to purchase for the price at which the lessor was willing to sell. That was a matter capable of ascertainment, and it became fixed and determined long before this action was brought.

■ The appellants' final contention is that the respondent was not entitled to specific performance because of his own laches. The evidence supports the court's finding against this contention. It appears that the respondent desired to buy the property as early as April, 1943, that he had the money in the bank to pay for it, and that he considered the price then asked, $7,500, as too high. That it was too high is indicated by the fact that it was sold to the Garcias a few months later for $4,500. The respondent was not given an opportunity to purchase at that price before that sale was made, and he knew nothing of that sale until it had been completed. Within less than a month thereafter he endeavored to ascertain the facts in that regard, but was not successful until early in January, 1944. About a month later, he made a written offer and tender to both Blinn and Garcia, giving notice of his election to exercise his option and offering to pay the price for which the property had been sold. While the exact date does not appear, this action was started within a reasonable time thereafter. In the meantime, he had to pay the rent in order to preserve his rights. Moreover, the sale to the Garcias had been fully completed before the respondent was aware of it, they did not change their position because of anything done by him, and no possible damage or prejudice to them appears.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.