[Civ. No. 19654.   First Dist., Div. Two.   July 20, 1961.]

AMCO PLASTIC PIPE COMPANY, Respondent, v. JET SPECIALTIES COMPANY et al., Defendants; FLEK CORPORATION (a Corporation), Appellant.

Tanner, Odell & Taft and Everett Shilling for Appellant.

Breed, Robinson & Stewart for Respondent.

SHOEMAKER, J.—This is an appeal by the defendant from a judgment for plaintiff in an action to recover damages for breach of contract. Although Jet Specialties Company was originally named as defendant in this action, Flek Corporation was substituted as defendant pursuant to a pretrial order.

Plaintiff was a manufacturer of plastic tubing, and defendant was engaged in producing and marketing hula hoops made from this tubing. Through a series of oral negotiations and letters exchanged between the parties, plaintiff and defendant entered into a contract whereby plaintiff was obligated to sell and defendant to purchase a certain quantity of plastic tubing to be manufactured by plaintiff. It is apparent from the pretrial statement that both parties admitted the existence of a contract and differed only as to what terms had been included therein.

After certain preliminary oral negotiations between the parties, plaintiff wrote defendant on September 5, 1958, listing certain terms which it desired to include in any contract to be made between the parties. These terms included the specifications for the tubing to be produced, the price to be paid for the tubes, and the desired duration of the contract. The following provision was also set forth: "Payment for tubes to be net 10 days from date of pick-up or shipment. If payments are late, we have the right to sell tubes on the open market." The letter concluded with the request that defendant draw up a contract and send it to plaintiff if these terms were agreeable to defendant.

On September 12, 1958, defendant wrote plaintiff, requesting that plaintiff "consider this letter a contract as follows:"

"You will make tubes for us measuring eight feet seven inches (8'7") long and weighing 8½ to nine ounces from Linear Polyethylene for $.39 each, f.o.b. your plant.

"Payment for the tubes to be made every ten (10) days and should you have more than the production available from the 2½ inch extruder, we shall be given the privilege of buying this, also. . . .

"We, also, cannot give you more than a thirty (30) day guarantee as you can imagine that this market could soften very rapidly, however, we will buy all of the tubing used for the San Francisco operation from you, that will be necessary as long as this item is saleable."

On September 15, 1958, plaintiff wrote defendant, stating:

"Your letter received this morning covers the arrangement

very well, and we will consider it a contract within the terms it outlines, for 30 days production beginning today.''

On September 17, 1958, defendant wrote plaintiff, stating that he was delighted to hear that the 3½-inch extruder was back in production. He also wrote, ''Please consider this letter your order to give us all of the tubing now available from both extruders. . . .''

On October 2, 1958, the market for hula hoops collapsed, and defendant telegraphed plaintiff to stop production.

After considering both the written and oral evidence presented by the parties, the trial court found that the following contract had been formed between the parties: Plaintiff was obligated to sell and defendant to purchase for a period of 30 days commencing September 15, 1958, certain production of a 2½-inch extruder, which both parties understood to be 4,000 tubes per day. If plaintiff should put the 3½-inch extruder into production defendant would be obligated to purchase an additional 6,000 tubes per day (which was the production to be expected from this extruder). As to the additional 6,000 tubes per day, however, defendant's obligation to purchase was cancellable at any time as to future production. Defendant was obligated to pay plaintiff in full within 10 days after receipt of invoice, and if defendant were ever in default in said payments, plaintiff was entitled to sell the tubes in the open market without regard to deliveries to defendant.

The trial court further found that defendant failed to purchase 49,617 pieces of tubing which it had contracted to purchase, and that defendant at no time during the duration of the contract paid plaintiff within 10 days from receipt of invoice. Judgment was therefore entered in favor of plaintiff in the amount of $7,695.80. Defendant appeals therefrom.

Appellant's first contention is that the trial court erred in admitting parol evidence adding to the terms of the contract. It is appellant's position that the parties entered into a written contract which was contained in appellant's letter of September 12th and respondent's answering letter of September 15th.

Appellant points out that this contract, as interpreted by the trial court, required respondent to provide appellant with 4,000 tubes per day for the full 30-day period of the contract (since this was the expected output from the 2½-inch extruder). When respondent put the 3½-inch extruder into operation on September 17th, respondent was then obligated to supply appellant with an additional 6,000 tubes per day

from this machine until further notice from appellant, who was entitled to cancel his order, as to the 3½-inch extruder, at any time. Since appellant did not cancel this order until October 2d, respondent should thus have supplied a total of 216,000 tubes during the entire duration of the contract. Respondent admittedly fell short of meeting this obligation by several thousands. It is, therefore, appellant's position that respondent clearly breached the contract and that the trial court erred in finding that respondent performed all things required of it under the contract.

Respondent admittedly did not provide appellant with the full production of tubes produced from both extruders, therefore the trial court's conclusion that respondent had fully performed is necessarily based on its finding that respondent was under no duty to deliver tubes to appellant when appellant was in default on its payments. It is appellant's contention that parol evidence of this additional agreement between the parties should not have been admitted by the trial court. Appellant points out that respondent originally suggested in its letter of September 5th that respondent should have the right to sell the tubes in the open market without regard to deliveries to appellant if appellant failed to pay on time, but that this term was *not* included in his answering letter of September 12th, and hence is conclusive evidence that it was not intended to be a part of the contract. Appellant argues that admission of parol evidence on this point improperly added to the parties' written contract.

Courts have in the past construed the parol evidence rule strictly; however, recent decisions have adopted a more liberal approach.

In *American Industrial Sales Corp.* v. *Airscope, Inc.* (1955), 44 Cal.2d 393 [282 P.2d 504, 49 A.L.R.2d 1344], the court allowed the introduction of parol evidence of a contemporaneous oral agreement as to the place of payment, even though such agreement conflicted with the presumption that a contract, silent as to place of payment, is payable where the creditor resides. ▪ The court stated:

"It has long been the rule that when the parties have not incorporated into an instrument all of the terms of their contract, evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms. [Citations.]. . . ." (P. 397.)

In *Mangini* v. *Wolfschmidt, Ltd.* (1958), 165 Cal.App.2d 192 [331 P.2d 728], the plaintiff sued for breach of a contract under which he was employed as a manufacturer's agent by the defendant. Although the written contract was silent as to the duration of plaintiff's employment, the trial court refused to admit parol evidence on this issue. ▉ On appeal, the judgment was reversed, with the court stating:

"Respondent relies strongly upon declarations . . . that '. . . parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed.' The last quoted rule must be limited in its application to writings which appear as a matter of law to be complete integrations. Unless so limited it would be out of harmony with prevailing authority . . ." (P. 203.)

▉ The written contract in the case at bar clearly contains nothing in conflict with an agreement that respondent should have the right to sell tubes on the open market if appellant were to fall behind in his payments. The contract simply provides, "Payment for the tubes to be made every ten (10) days . . ." No other term of the written contract makes any reference whatever to the amount to be paid every 10 days, the manner of payment, or any other related provision.

Clearly, parol evidence of an oral agreement that respondent could sell tubes to others if appellant fell behind in his payments does not conflict in any way with the written contract. It would seem equally clear that the written contract certainly cannot be said as a matter of law to be a complete integration. Without the aid of parol evidence, the contract would clearly be incomplete in several respects. Although the contract provided that payments were to be made every 10 days, the contract failed to state when the 10 days would begin to run or what amount would be due at the end of the 10 days. Only through the aid of parol evidence was the trial court able to determine that the payments were to cover all tubes received to date and that the 10 days would run from receipt of invoice. Even to determine the amount of tubes which respondent was obligated to sell and appellant to purchase, it was necessary to introduce parol evidence as to the number of tubes which both parties expected to be produced by the two extruders. It is therefore apparent that the contract cannot be said as a matter of law to be a complete integration and that the trial

court did not err in admitting evidence of the oral understanding that respondent could sell the tubes to others if appellant fell behind in payments. Since appellant does not dispute the trial court's finding that it was continually in default during the entire duration of the contract, it would seem that respondent's failure to deliver the full production of tubes was not inconsistent with full performance by respondent.

Appellant next contends that even if parol evidence was properly admissible, there was no evidence to support the finding that the parties had ever agreed that respondent should be entitled to sell tubes on the open market when appellant defaulted in payments. Respondent's letter of September 5th, in which this term was specifically set forth, was certainly evidence of the fact that respondent wished this provision to be included in the contract between the parties. Respondent also testified to an oral agreement between the parties that respondent should be entitled to sell tubes to others if appellant defaulted in its payments. Upon this showing there was sufficient evidence to support the trial court's finding that the parties had agreed to include this additional provision in their contract.

Appellant's final contention is that the finding of full performance on respondent's part cannot be allowed to stand because the evidence conclusively established that the tubing supplied by respondent was defective. Appellant points out that it continually cautioned respondent against making the tubing too soft; that it had received complaints from some of its customers; and that it was forced to scrap and replace 282 dozen tubes. Appellant further contends that the evidence established that respondent used substandard materials in making the hoops, and refers to testimony by respondent that it had altered the composition of the tubes in order to make them stiffer, it being appellant's position that respondent's action was, in effect, an admission that its tubes were defective.

Respondent, on the other hand, points out that the contract provided that it was to supply appellant with tubes of specific dimensions made from ''Linear Polyethylene.'' Respondent's general manager defined linear polyethylene as polyethylene with a density of .94 or better, and that all the tubing sold to appellant was of such density or better. The trial court undoubtedly concluded that respondent was fulfilling its part of the contract as long as it supplied appellant with tubes made from ''Linear Polyethylene,'' regardless of whether or

not tubes made from this particular material were always of a sufficient stiffness to make satisfactory hula hoops.

There was considerable conflict in the evidence pertaining to the quality of the tubing produced by respondent. The record discloses sufficient evidence upon which the trial court could have found that respondent's tubes met the contract requirements.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.