[Civ. No. 21442. First Dist., Div. One. Aug. 18, 1964.]

ESTHER R. SCHWARTZ, Plaintiff and Respondent, v. DAVID J. SHAPIRO et al., Defendants and Appellants.

Alfred M. Miller for Defendants and Appellants.

J. Thaddeus Cline and John B. Ehlen for Plaintiff and Respondent.

MOLINARI, J.—On this appeal from an interlocutory decree of partition[1] the principal question presented is whether the trial court erred in admitting parol evidence to explain the meaning of a writing which constituted a partial integration of an agreement. Having concluded that the evidence should not have been admitted, we hold that pursuant to the terms of said agreement plaintiff was not entitled to a partition of the property which is the subject of this litigation without first offering to sell her interest to defendants. Accordingly, that portion of the judgment decreeing partition must be reversed and the portion denying defendants relief on their cross-complaint affirmed.

On March 22, 1961, plaintiff, Esther R. Schwartz, and defendants, David J. Shapiro (hereinafter sometimes referred to as Shapiro), and his wife, Eve L. Shapiro, entered into a contract for the purchase of an apartment building for $143,000. At the time of entering into this contract it was discussed between plaintiff and defendants that the property was being purchased for purposes of resale and that it should be held for more than six months in order to obtain capital gain tax benefits. There was also a discussion about the possibility of either party selling his interest to ''someone not of

---

[1]An interlocutory judgment or decree of partition determining the rights and interests of the parties and directing that partition be made is an appealable judgment, regardless of whether partition is ordered in kind or by sale of the property and division of the proceeds. (Code Civ. Proc., § 963, subd. 2; *Williams* v. *Wells Fargo Bank,* 17 Cal.2d 104, 106 [109 P.2d 649].)

the white race.'' The sale was finalized on May 2, 1961, when a deed to said property was recorded. On March 30, 1961, and prior to the consummation of said sale, plaintiff and defendants affixed their signatures to a writing[2] which reads as follows:

''San Francisco March 30, 1961

''This agreement between Ester [sic] R. Schwartz & David & Eve Shapiro, being lawful owners of property known as 85 Heather, hereby agree that should either party agree to sell their $\frac{1}{2}$ interest individually that sale of same shall be first offered to the remaining owner at the original purchase price.

''Should at any time owners of above property decide to sell or trade up, same shall be handled by Schwartz Realty. All funds to be handled thru a separate Bank account requiring signature of both interests.

David J. Shapiro
Eve L. Shapiro
Esther R. Schwartz''

Disputes between the parties having thereafter arisen concerning the management and sale of the property, plaintiff filed an action for partition. As an affirmative defense in their answer, and also by way of cross-complaint, defendants alleged that pursuant to the terms of the written agreement they were entitled to purchase plaintiff's interest in said property and that by reason of the commencement of the action plaintiff had offered to sell her interest in said property, which offer defendants, by such answer, accepted. Accordingly, defendants prayed that they ''be declared entitled to purchase the said property upon the terms and conditions set forth in the agreement of March 30, 1961. . . .''

At the trial the court permitted plaintiff to testify over defendants' objection, but subject to a motion to strike,[3] that at the time the subject writing was signed it was discussed between the parties that the property was to be held for six months or more; that when it was sold it was to be sold by the parties jointly; that none of the parties was to sell his interest separately; and that the parties were to manage the

---

[2]This writing was handwritten by Shapiro.

[3]The testimony was permitted upon the representation of plaintiff's counsel that it was not offered for the purpose of varying the terms of the subject agreement, but to show ''[s]omething separate and apart.''

property jointly, the defendants to live on the premises at a reduced rental and the plaintiff's firm to receive a monthly fee.[4]

Prior to the giving of this testimony by plaintiff, Shapiro[5] had testified, on direct examination, that prior to the execution of the subject writing he had suggested to plaintiff, on several occasions, that they should have an agreement drawn by an attorney concerning "the operation of the property"; that plaintiff stated she was busy with other matters; and that finally the parties met and entered into the writing in question; that it was agreed that they would put their " 'thoughts down on paper' " until such time as they could get to an attorney so that " 'it is clear enough for an attorney to make something out of.' "

The trial court found that "It was understood and agreed between them that they would hold and operate the property as co-partners for a period of six months to get advantage of long-term capital gain tax and thereafter sell said property. That at all times since the end of the *sxi*-months' period defendants have refused to sell or authorize the sale of said premises." The court further found that: "[O]n March 30th and before the sale was consummated, the parties discussed the possibility of either party selling his one-half interest to an Oriental or other purchaser who might be considered by the other party. Defendant David J. Shapiro then wrote a long-hand memorandum, Exhibit 'C'[6] herein, which was thereupon signed by the said parties. . . . That at said

---

[4]The verbatim testimony was as follows: "THE COURT: Never mind what you agreed. What was said? THE WITNESS: That if the property was sold, it would have to be sold as a whole, the whole thing. Neither one of us could sell a half-interest individually, because we were afraid somebody might sell to a colored person, or an individual that might ruin the price, the value of the property. It would have to be sold as a whole piece. . . . THE WITNESS: Mr. Shapiro and I talked things over, and his wife; and they decided to move into the building, and I decided I might, or might not. However, we decided that we would keep the property at least six months or more, because of capital gains, and afterward, if we decided to sell at that time, it would have to be sold as an individual piece; and at that time we discussed the management of the property, and so forth. And we were to manage the property, and he was to get $35.00 off of a $135.00 rent which he was supposed to pay, and which was supposed to be the price of each part. He was supposed to be allowed $35.00 for taking care of the building. And my Schwartz Realty was to get $2.00 a month for each part."

[5]Defendant Eve L. Shapiro did not testify at the trial.

[6]The subject writing was referred to as Exhibit C in the court below.

time and all times since, a partnership and confidential relationship existed between the parties. Neither party had the advice of an attorney before signing said document, but it was agreed between the parties that said document was preliminary to securing a formal contract to be prepared by an attorney. That in signing said document the parties relied upon their said prior understanding that they would hold said premises for six months and then joing [sic] in a sale of said property, and understood and intended that the provision 'should either party agree to sell their ½ interest individually' applied to the situation that the parties had been discussing, as aforesaid, namely, the possibility of either party selling his one-half interest to some undesirable third party.'' Upon these findings the trial court concluded ''That to construe the said document executed by the parties under date of March 30, 1961 . . . so as to make the same apply to a sale of the entire fee under an order of Court herein would be grossly unfair and inequitable, and not in accordance with their mutual intent and consent at the time they signed said document.'' The court below also reached the conclusion ''That the filing of the partition *d*uit did not constitute an agreement by plaintiff to 'sell her ½ interest individually.' To the contrary, there can be no sale in a partition suit other than the sale of the entire fee and such sale must be made by the Court and not by either party.'' Defendants appeal from the judgment ''signed on November 19, 1962 and filed November 26, 1962 and from the whole thereof.''[7] The record discloses that this judgment is the interlocutory decree of partition.

It is apparent from defendants' briefs that they purport to appeal both from the decree of partition and the trial court's adjudication that they are not entitled to specific performance, which determination is apparently based upon the trial court's conclusion that the subject writing was grossly unfair and inequitable. Defendants labor under the impression that the judgment denies them the relief prayed for in their cross-complaint. █ A perusal of the interlocutory decree of

[7]Defendants have also appealed from the '' 'Order Fixing Bond on Appeal' '' and requested a transcript of the proceedings but none is found in the record on appeal. Moreover, defendants have not argued or briefed any question relative to the propriety of said order. Under the circumstances we deemed the appeal from such order abandoned and such appeal will be dismissed. (See *Estate of Lee,* 225 Cal.App.2d 578, 582 [37 Cal.Rptr. 572].)

partition, which is the only judgment signed by the court and entered by the clerk, discloses that it is the usual decree ordering partition, sale and distribution of the proceeds. It is entirely silent on the issues tendered by the cross-complaint. Accordingly, it is apparent that we do not have one final judgment, a prerequisite to the right of appeal. (*Gombos* v. *Ashe,* 158 Cal.App.2d 517, 520 [322 P.2d 933].) Consonant with "the one final judgment rule," an appeal will be dismissed where a purported final judgment is rendered on a complaint without adjudicating the issues raised by a cross-complaint. (*Nicholson* v. *Henderson,* 25 Cal.2d 375, 381 [153 P.2d 945]; *Tsarnas* v. *Bailey,* 179 Cal.App.2d 332, 337 [3 Cal. Rptr. 629]; *Verdier* v. *Verdier,* 203 Cal.App.2d 724, 730-731 [22 Cal.Rptr. 93].) The notice of appeal in the present case is, therefore, premature. ■ We are of the opinion, however, that the situation calls for the application of the rule announced in *Gombos* v. *Ashe, supra,* pages 523-525, and since followed in other cases. (See *Tsarnas* v. *Bailey, supra,* at p. 337; *Behr* v. *County of Santa Cruz,* 172 Cal.App.2d 697, 702-703 [342 P.2d 987]; *Levizon* v. *Harrison,* 198 Cal.App.2d 274, 284 [18 Cal.Rptr. 284]; *Shepardson* v. *McLellan,* 59 Cal.2d 83, 88-89 [27 Cal.Rptr. 884, 378 P.2d 108].) The rationale of the *Gombos* rule is that an appellate court may, in its discretion, and in harmony with the relaxation of the rules on appeal, obviate the harsh result attendant premature appeals by ordering judgment, where the intention of the trial court is clear, rather than sending the case back to the lower court for the performance of that act. The *Gombos* procedure finds its basis in the interests of justice and is predicated upon the salutary desire of preventing unnecessary delay. In the present case it is obvious from the decree of partition and the findings of fact and conclusions of law that the trial court intended to adjudicate the rights of the parties with respect to the subject property by decreeing partition and denying any relief to defendants on their cross-complaint. By its decree of partition the trial court rejected defendants' prayer for specific performance because these remedies are inconsistent. The former decreed a forced sale of the entire property while the latter would have compelled plaintiff to convey her interest to defendants. It should be noted, moreover, that the same issues tendered by the cross-complaint are raised by affirmative defense in the answer. The *Gombos* procedure is impelled, furthermore, because, as we shall hereinafter point out, the cross-complaint not only failed to state a cause

of action but this defect was not cured by the evidence. In view of these considerations, including the circumstance that the issues raised by the cross-complaint have been briefed, we adopt the procedure of the *Gombos* case and order that the judgment be amended to provide that defendants take nothing by their cross-complaint and that judgment thereon be in favor of plaintiff cross-defendant. Accordingly, the notice of appeal prematurely filed is declared to be a notice of appeal from the judgment as thus amended. (See *Gombos* v. *Ashe, supra,* at p. 530; *Behr* v. *County of Santa Cruz, supra,* at p. 703; *Shepardson* v. *McLellan, supra,* at p. 89.)

Before proceeding to a discussion of the appeal on its merits it should be pointed out that the parol evidence in question was admitted subject to a motion to strike. Counsel for defendants at no time made such a motion. Ordinarily, the failure to make the motion results in a waiver of the right to object on appeal. (*Tarpey* v. *Veith,* 22 Cal.App. 289, 294-295 [134 P. 367]; *Conte* v. *Busby,* 115 Cal.App. 732, 735 [2 P.2d 458]; *Estate of Wempe,* 185 Cal. 557, 564 [197 P. 949]; Witkin, California Evidence, § 719, p. 749.) The rationale of the cases holding that a waiver occurs when no motion to strike is made is predicated upon the presumption that the party was satisfied with the ruling as originally made. (See *Tarpey* v. *Veith, supra,* at p. 295.) The record in the present case discloses that defendants' counsel, in a colloquy with the court at the conclusion of the trial, stated that he was reserving "all of our rights" to which the trial judge responded "You have not given up any rights at all." Under the circumstances, defendants did not waive their right to object to the subject testimony on this appeal.

It should also be observed that the trial court found that at the time of the signing of the writing in question it was agreed that such writing was preliminary to securing a formal contract to be prepared by an attorney. The record discloses that no such formal agreement was ever prepared. The applicable rule is stated by Witkin as follows: "Parties may engage in preliminary negotiations, oral or written, in order to reach an agreement. These negotiations ordinarily result in a binding contract when all of the terms are definitely understood, even though the parties intend that a formal writing embodying these terms shall be executed later." (1 Witkin, Summary of Cal. Law, Contracts, § 38, p. 46; *Thompson* v. *Schurman,* 65 Cal.App.2d 432, 440 [150 P.2d 509]; *Gavina* v. *Smith,* 25 Cal.2d 501, 504 [154 P.2d 681]; *Nolte*

v. *Southern Cal. Home Bldg. Co.,* 28 Cal.App.2d 532, 534-535 [82 P.2d 946]; *Clarke* v. *Fiedler,* 44 Cal.App.2d 838, 846-847 [113 P.2d 275]; *Columbia Pictures Corp.* v. *DeToth,* 87 Cal.App.2d 620, 629 [197 P.2d 580]; *Kreling* v. *Walsh,* 77 Cal.App.2d 821, 834 [176 P.2d 965]; *Fly* v. *Cline,* 49 Cal. App. 414, 425 [193 P. 615]; Rest., Contracts, § 26, p. 33.) In *Fly,* it is stated: ''[W]here the minds of the parties have met respecting the terms and conditions of the more formal writing that is to be executed by them, and the agreed terms of the contract thereafter to be executed are certain and in all respects definitely understood and agreed upon in advance, either orally or by informal writing, there is in such case an obligatory contract. . . .'' (Pp. 425-426.) The formal written contract is not the agreement of the parties, but only evidence of that agreement (*Clarke* v. *Fiedler, supra,* at p. 846); it adds nothing to what the parties have already agreed upon. (*Gavina* v. *Smith, supra,* at p. 504.) Accordingly, the oral terms agreed upon, or the informal writing or writings entered into, become the binding contract notwithstanding the agreement was not reduced to a more formal writing. (*King* v. *Stanley,* 32 Cal.2d 584, 591 [197 P.2d 321]; *Gavina* v. *Smith, supra,* p. 504; *Johnston* v. *20th Century-Fox Film Corp.,* 82 Cal. App.2d 796, 820-821 [187 P.2d 474].) ■ The question whether an oral or written agreement, including all the essential terms and conditions thereof, which according to the mutual understanding of the parties is subsequently to be reduced to a formal instrument shall take effect forthwith as a completed contract depends upon the intention of the parties to be determined by the surrounding facts and circumstances. (*Thompson* v. *Schurman, supra,* at pp. 440-441; *Johnston* v. *20th Century-Fox Film Corp., supra,* at p. 821; *Columbia Pictures Corp.* v. *DeToth, supra,* at p. 629; *Kreling* v. *Walsh, supra,* at p. 834.)

Turning to the instant case in the light of the foregoing principles, we must look to the informal agreement entered into between the parties on March 30, 1961. It is not clear from the trial court's findings whether it found that the agreement of the parties was integrated into the writing in question or whether it found that the agreement of the parties rested partly in parol and partly in writing. Moreover, as to the transaction embodied in the subject writing it is likewise unclear whether the trial court considered it ambiguous and therefore permitted parol evidence to explain it, or whether it deemed the subject writing, viewed from its four corners, as unambiguous but so grossly unfair and inequitable as to

render it unenforceable. This latter interpretation is consistent with the trial court's attitude throughout the trial as expressed in colloquy with counsel. It is well established, however, that a trial judge is not restricted in his final decision by any antecedent remarks or opinions, and that a reviewing court is concerned with whether the findings are supported by the evidence and the final decision is correct, and not with whether the trial court's expressions or opinions in the course of the trial are in harmony with the results reached. (*Bailey* v. *Fosca Oil Co.*, 180 Cal.App.2d 289, 293 [4 Cal.Rptr. 474] ; *Stone* v. *Los Angeles County Flood Control Dist.*, 81 Cal.App.2d 902, 907 [185 P.2d 396].) At oral argument defendants urged that the findings can only be interpreted to mean that the trial judge deemed the writing unambiguous but refused to enforce it because it was inequitable. It is their position, moreover, that since the subject writing was unambiguous, the trial court erred in admitting parol evidence to explain it. It is to be noted that defendants do not contend that there has been an integration of the entire agreement between the parties in the subject writing. They concede that there were other contemporaneous oral agreements covering the management of the property but urge they in no way affect or control the agreements committed to writing. The gist of their argument appears to be that there is a partially integrated contract; that to the extent so integrated such contract cannot be contradicted by parol evidence; that the meaning of that part of the contract which has been put in writing is plain as to its provisions with respect to the manner in which one party could dispose of his interest in the property should that party desire to sell it; and that the trial court was therefore not free to find upon the parol evidence that the provisions in the writing with respect to such disposition meant anything else. Plaintiff agrees that the entire agreement of the parties was not integrated. She urges, however, that a contemporaneous oral agreement was entered into containing terms upon which the writing was silent, and which were not inconsistent with such writing. Accordingly, plaintiff contends that the extrinsic evidence received consisted of this separate oral agreement, that such evidence was in no way inconsistent with the terms of the writing, and that therefore no violence was done to the parol evidence rule.

"An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expres-

sion of the agreement. An integration is the writing or writings so adopted." (Rest., Contracts, § 228, p. 307.) A contract, however, may be partly written and partly oral in the sense that in legal contemplation it is neither written nor oral, but oral or written evidence may be received to establish the terms of the contract or agreement between the parties. (*Lande* v. *Southern Cal. Freight Lines*, 85 Cal.App.2d 416, 420 [193 P.2d 144].) In such a case we have a partial integration: that is, only a certain part of a transaction is embodied in a writing and the remainder is left in parol. (Rest., Contracts, § 229, p. 309; 9 Wigmore, Evidence (3d ed) § 2430, p. 97; McCormick on Evidence (1954) § 212, pp. 432-433; Witkin, Cal. Evidence, § 360, p. 401; see *Mangini* v. *Wolfschmidt, Ltd.*, 165 Cal.App.2d 192, 198 [331 P.2d 728].)

██ Where there has been a partial integration, parol evidence is admissible to prove that part of the contract not reduced to writing but is not admissible to vary or contradict that part which is. (*Hulse* v. *Juillard Fancy Foods Co.*, 61 Cal.2d 571 [39 Cal.Rptr. 529, 394 P.2d 65]; *Sivers* v. *Sivers*, 97 Cal. 518, 521 [32 P. 571]; *Pierce* v. *Edwards*, 150 Cal. 650, 654 [89 P. 600]; *Keeler* v. *Murphy*, 117 Cal.App. 386, 390-391 [3 P.2d 950]; Rest., Contracts, § 239, p. 335; Wigmore, § 2430; Witkin, Cal. Evidence, § 361, p. 402; 18 Cal.Jur.2d, Evidence, § 258, p. 741.) *Wigmore*, in his discussion of this rule, states: "[O]bviously the rule against disputing the terms of the document will be applicable to *so much of the transaction as is so embodied, but not to the remainder.*" (P. 97.) *Witkin* summarizes the rule thusly: "The parties may reduce only a part of their agreement to writing, leaving the rest to their oral understanding. In such a case it has been said that the integrated part is protected by the parol evidence rule in the same manner as if the whole contract were integrated." (P. 402.) The operation of the parol evidence rule under the partial integration rule is not repugnant to the long-established rule urged by plaintiff that when the parties have not incorporated into an instrument all of the terms of their contract, evidence is admissible to prove the existence of a separate oral agreement *as to any matter on which the document is silent and which is not inconsistent with its terms.* (*American Industrial Sales Corp.* v. *Airscope, Inc.*, 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R. 2d 1344]; *Bowman* v. *Santa Clara County*, 153 Cal.App.2d 707, 711-712 [315 P.2d 67]; *Mangini* v. *Wolfschmidt, Ltd., supra*, at p. 199.) The crux of the inquiry, in each instance, is not whether the evidence is in parol, but whether such evi-

dence is *inconsistent* with that portion of the agreement reduced to writing.

Applying the above principles to the case at bench it is manifest that the writing in question is an integration of a part of the terms of the agreement between the parties. We are not here confronted with the task of determining whether a writing apparently complete on its face is nevertheless only a partial integration because neither party asserts that the document involved is an integration of the entire contract.[8] The subject writing, standing alone, is clearly contractual. It is in the nature of an option to purchase property or a right of preemption, that is, it purports to be an agreement by which an owner of an interest in property invests his co-owner with the exclusive right to purchase such interest at such time as the former shall elect to sell, at a stipulated sum, without imposing upon the latter an obligation to purchase. (See *Falkenstein* v. *Popper,* 81 Cal.App.2d 131, 133-137 [183 P.2d 707]; *Moreno* v. *Blinn,* 81 Cal.App.2d 852, 854-855 [185 P.2d 332]; *Schmidt* v. *Beckelman,* 187 Cal.App.2d 462, 469-470 [9 Cal.Rptr. 736]; *Richfield Oil Corp.* v. *Security-First Nat. Bank,* 159 Cal.App.2d 184, 189-191 [323 P.2d 834]; *Showcase Properties, Inc.* v. *Winer,* 139 Cal.App.2d Supp. 934, 935-936 [294 P.2d 195]; *R. I. Realty Co.* v. *Terrell,* 254 N.Y. 121 [172 N.E. 262]; *Barling* v. *Horn* (Mo.) 296 S.W.

---

[8]In view of the rule declared in *American Industrial Sales Corp.* v. *Airscope, Inc.,* 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344], that when the parties have not incorporated into an instrument all of the terms of their contract, evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms, it would appear that a more liberal approach has been taken than that encompassed in ''the face of the document test'' which takes the position that finality is determinable from the document itself. (See *Mangini* v. *Wolfschmidt, Ltd.,* 165 Cal.App.2d 192, 198-199 [331 P.2d 728]; *Spurgeon* v. *Buchter,* 192 Cal.App.2d 198, 202-203 [13 Cal.Rptr. 354]; *Amco Plastic Pipe Co.* v. *Jet Specialties Co.,* 194 Cal.App.2d 32, 36-37 [14 Cal.Rptr. 712].) The ''face of the document test'' followed by a number of earlier California cases is stated by Witkin as follows: ''If on its face it purports to be a complete expression of the agreement, it is conclusively presumed to contain all of the agreed terms, and extrinsic evidence is excluded.'' (Witkin, Cal. Evidence, § 361, p. 402; see *Harrison* v. *McCormick,* 89 Cal. 327, 330 [26 P. 830, 23 Am.St.Rep. 469]; *Germain Fruit Co.* v. *Armsby Co.,* 153 Cal. 585, 594 [96 P. 319]; *Johnson* v. *Bibb Lumber Co.,* 140 Cal. 95, 98 [73 P. 730]; *United Iron Wks.* v. *Outer H. etc. Co.,* 168 Cal. 81, 84 [141 P. 917]; *Thoroman* v. *David,* 199 Cal. 386, 390 [249 P. 513]; *Morgan* v. *Green,* 86 Cal.App. 216, 222 [260 P. 596]; *El Zarape etc. Factory, Inc.* v. *Plant Food Corp.,* 90 Cal.App.2d 336, 343 [203 P.2d 13].)

2d 94, 97; 1 Witkin, Summary of Cal. Law, Contracts, § 51, p. 57.) Our immediate inquiry is whether the language of this writing is susceptible of two or more constructions.

When the language of a writing which constitutes a partial integration of an agreement is fairly susceptible of two or more constructions, parol evidence may be considered, not to vary or contradict the terms of the writing, but to aid the court in ascertaining the true intent of the parties. (*Hulse* v. *Juillard Fancy Foods Co., supra,* 61 Cal.2d 571; see *Barham* v. *Barham,* 33 Cal.2d 416, 422-423 [202 P.2d 289]; *Imbach* v. *Schultz,* 58 Cal.2d 858, 860 [27 Cal.Rptr. 160, 377 P.2d 272]; *Nofziger* v. *Holman,* 61 Cal.2d 526, 528 [39 Cal. Rptr. 384, 393 P.2d 696].) A reading of the writing discloses that it deals solely with the sale of a party's interest in the subject property. We have concluded that its language is susceptible of only one construction, that is, that one party will not sell his one-half interest in the property without first giving to the other coowner the right to purchase it at a price not in excess of the original purchase price. It is plain from these terms that one owner is at liberty to sell his interest at any time to any person, subject only to the condition that he must first offer it to his coowner at the price for which the selling owner originally purchased it.

Clearly, the writing is not silent on the subject of the sale of an owner's interest and the manner in which it is to be offered for sale. The oral testimony that the property was not to be sold until it was held six months;[9] that it was purchased only for resale; that it was only to be sold jointly; and that the option to purchase was applicable only in the event of an attempted alienation of an individual share to a non-Caucasian or to an undesirable party is clearly inconsistent with the terms of the writing. This extrinsic evidence is not only in contradiction of the language of the writing, but varies and modifies it. The testimony that the right to purchase was operative *only* if one party desired to sell to an undesirable party clearly adds a condition precedent not contained in the writing. We conclude, therefore, that the oral testimony with respect to the manner in which one party could dispose of his interest in the property should that party desire to sell it was erroneously admitted in violation of the parol evidence rule. The conclusion herein reached in no way affects the contemporaneous oral agreement respecting the management of the property and the collection of the

[9]This purported condition was moot at the time the action was commenced as the property had then been held longer than six months.

rentals as these agreements cover matters on which the subject writing is silent.

 Turning to the question of partition, it is obvious that if one of the parties can bring an action in partition he can nullify the terms of the writing which requires one party to first offer to sell his interest to the other. While it is the general rule that a cotenant may require a partition of the cotenancy as a matter of absolute right (*Nazzisi* v. *Nazzisi,* 203 Cal.App.2d 121, 123 [21 Cal.Rptr. 396]; *De Roulet* v. *Mitchel,* 70 Cal.App.2d 120, 124 [160 P.2d 574]; *Lazzarevich* v. *Lazzarevich,* 39 Cal.2d 48, 50 [244 P.2d 1]; *Kaupe* v. *Kaupe,* 131 Cal.App.2d 511, 513 [280 P.2d 856]; Code Civ. Proc., § 752), this right may be modified or waived by contract, either expressly or by implication. (*Asels* v. *Asels,* 43 Cal. App. 574, 578 [185 P. 419]; *Miranda* v. *Miranda,* 81 Cal.App. 2d 61, 65 [183 P.2d 617]; *Rowland* v. *Clark,* 91 Cal.App.2d 880, 882 [206 P.2d 59]; *Teutenberg* v. *Schiller,* 138 Cal.App. 2d 18, 22 [291 P.2d 53]; *Thomas* v. *Witte,* 214 Cal.App.2d 322, 327 [29 Cal.Rptr. 412]; *Nazzisi* v. *Nazzisi, supra,* at p. 123.)

 It should also be noted that an action for partition is similar to a forced sale of the premises and constitutes a joint sale of all the property by order of a court of equity. (*Kaupe* v. *Kaupe, supra,* at p. 514; *Vollmer* v. *Wheeler,* 42 Cal. App. 1, 6-7 [183 P. 264].)

 In view of our conclusion that pursuant to the terms of the writing a selling owner must first offer his interest to his coowner before he can sell to a third party, we must conclude that the absolute right to partition has been modified by such writing to the extent that before partition can be had the selling owner must first offer his interest to the coowner. Upon the nonselling owner's refusal or failure to exercise his right to purchase within a reasonable time, the seller has discharged his obligation to his coowner and he may proceed with partition if he is so advised. To hold that plaintiff could proceed with a partition action without first offering defendants the right to purchase at the price specified would permit a circumvention of a contractual obligation. In *Miranda,* a property settlement agreement in conjunction with the dissolution of a marriage provided that the property " 'shall remain in the names of the parties hereto as "joint tenants" so long as First party does not remarry and so long as said property is occupied by First party as a home for herself and the children of the parties hereto.' " (P. 64.) The reviewing court said: "The agreement that the home was to remain in the names of the parties as long as the wife does

not remarry and so long as the property is occupied by her as a home for herself and the children *constitutes a restriction upon the rights of the parties to partition the property so long as these conditions exist, and constitutes a waiver of the right of either party to a partition during the prescribed period.*'' (P. 68; italics added; to the same effect see *Nazzisi* v. *Nazzisi, supra,* where it was provided in a property settlement agreement that the husband had the right to reside on the property during his lifetime; see also *Rowland* v. *Clark, supra,* at p. 882.) In *Rhodes* v. *Lane,* 202 Ga. 608 [44 S.E.2d 114], the appellate court had before it a provision similar to that in the present case. The agreement there provided as follows: '' 'In the event either partner wishes to sell or otherwise dispose of his half interest in the lot and building, the other partner shall have first option of purchasing the selling partner's interest at a price not to exceed the original investment of the selling partner.' '' (P. 115 [44 S.E.2d].) The following significant language in the opinion of the court is applicable to the instant case: ''The language in the contract under consideration is clear and unambiguous. Under it the petitioner agreed that he would not sell or otherwise dispose of his half interest in the property without first giving the defendant the opportunity to purchase that interest at a price not in excess of the original investment of the petitioner. The language is certainly broad enough to include a disposition of the property by partition proceedings, but it does not bar partition in all events. If, after an opportunity to purchase the interest of the petitioner under the terms of the contract, the defendant Rhodes should refuse to avail himself of this privilege, the right to partition the property would then arise. It is generally held that a party will not be decreed partition if it would be contrary to his own agreement. [Citations.] Since the petition fails to allege that the defendant was given an opportunity to purchase the one-half interest of the petitioner in accordance with the written contract, no right to a partition of the property was shown, and the trial court erred in overruling the general demurrer.'' (Pp. 115-116 [44 S.E.2d].)

In the case at bench the trial court found ''That it would be grossly unfair and inequitable for plaintiff to be compelled to sell her ½ interest in said property to defendants at her original cost.''[10] This determination poses an incon-

---

[10]There is evidence in the record that the market value of the property at the time of trial was $200,000.

sistency. If the agreement between the parties consisted of the subject writing as explained by extrinsic evidence, as was apparently determined by the trial court, the subject option to purchase was inoperative because the condition upon which it was predicated, i.e., the sale to an undesirable person, did not come to pass. Under these circumstances plaintiff would not have waived her right to partition, but would be entitled to seek a partition under her absolute right to do so because under the agreement, as interpreted by the court, her right was not in any manner restricted. In this posture the trial court would not be considering the fairness of the option to purchase because the condition upon which it was predicated had not occurred. If, on the other hand, the interpretation of the subject writing was restricted to its four corners, as we have held it must be, the trial court was entitled to consider, with respect to the relief sought by defendants in their cross-complaint, whether the subject writing was fair and equitable. It is, of course, elementary that a contract to be entitled to specific performance must be fair and just, its consideration adequate, and its enforcement equitable. (*Ruppert* v. *Jackson,* 212 Cal.App.2d 678, 684 [28 Cal.Rptr. 467]; *House* v. *Lala,* 180 Cal.App.2d 412, 418 [4 Cal.Rptr. 366]; *Jacklich* v. *Baer,* 57 Cal.App.2d 684, 693 [135 P.2d 179]; *Lamb* v. *California Water & Tel. Co.,* 21 Cal.2d 33, 44 [129 P.2d 371]; Civ. Code, § 3391, subds. 1 and 2.)

 The basis of the trial court's conclusion that the contract is unfair and inequitable, while not entirely clear, appears to be grounded on the fact that the property was purchased for $143,000 but was worth $200,000 at the time of trial. The fairness and reasonableness of a contract to convey must, however, be determined from conditions existing at the time it was made. A subsequent increase in value is immaterial as respects specific performance. (*Altman* v. *Blewett,* 93 Cal.App. 516, 525 [269 P. 751]; *Ornbaun* v. *Main,* 198 Cal.App.2d 92, 98 [17 Cal.Rptr. 631]; *O'Connell* v. *Lampe,* 206 Cal. 282, 285 [274 P. 336].) Agreements in the nature of the writing under scrutiny are not against public policy. (*Evans* v. *Dennis,* 203 Ga. 232 [46 S.E.2d 122, 125].) Accordingly, agreements whereby a party is given the "first opportunity" or the "first right" or the "first privilege" or the "first refusal" to purchase property or to renew a lease have been upheld in this state. (*Falkenstein* v. *Popper, supra,* 81 Cal.App.2d 131, 133-137; *Moreno* v.

*Blinn, supra,* 81 Cal.App.2d 852, 854-855; *Showcase Properties, Inc.* v. *Winer, supra,* 139 Cal.App.2d Supp. 934, 935-936; *R. I. Realty Co.* v. *Terrell, supra,* 172 N.E.2d 262; *Richfield Oil Corp.* v. *Security-First Nat. Bank, supra,* 159 Cal.App. 2d 184, 189-191; *Ablett* v. *Clauson,* 43 Cal.2d 280, 282-284 [272 P.2d 753]; *Nelson* v. *Reisner,* 51 Cal.2d 161, 165-167 [331 P.2d 17].) The cases have construed such options to mean that the optionee does not have an absolute right to purchase property or renew a lease but that he has an option to purchase or renew only in the event the optionor desires to sell or re-lease the property. In *Nelson,* the Supreme Court, in upholding the validity of such agreements, regarded the right to purchase or renew as a right of preemption rather than an option to purchase. The distinction there recognized was that an option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership, while a preemption does not give the preemptioner the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption, at the stipulated price. Upon the receipt of the offer the preemptioner elects whether he will buy and if he decides not to buy, then the owner may sell to anyone. Similar provisions have likewise been upheld in partnership agreements.[11] (*Wood* v. *Gunther,* 89 Cal.App. 2d 718, 727 [201 P.2d 874]; *Hagan* v. *Dundore,* 185 Md. 86 [43 A.2d 181, 160 A.L.R. 517]; *Succession of Jurisich,* 224 La. 325 [69 So.2d 361, 362-363]; *Rhodes* v. *Lane, supra,* 44 S.E.2d 114, 115-116.)

We are not unmindful that under certain circumstances the enforcement of agreements such as the one in the instant case would be inequitable. However, such agreements are not unfair or unconscionable per se. We are of the opinion that the cross-complaint in the instant action does not state a cause of action because it does not allege that plaintiff has sold or offered to sell her interest to another without first having offered it to defendants. However, no demurrer was interposed. The defect is not cured, in any event, by the evidence because no facts were shown other than that the sale price specified in the writing was less than the market value at the time of trial. There was no showing that the price of $143,000 originally paid by the parties was inade-

---

[11]The trial court also found that plaintiff and defendants were copartners. This finding is not disputed by either party.

quate. To the contrary, the evidence discloses, and it is not disputed, that such price was a fair market value reached after extensive negotiations with the previous owner. It was error, therefore, to hold that the subject preemption agreement was inequitable.

The conclusion reached by the court below that defendants are not entitled to specific performance is sustainable, however, on another ground. Before defendants are entitled to specific performance, or to damages in lieu thereof, they must show that the right to exercise their option or preemptive right has come into existence. (*Falkenstein* v. *Popper, supra*; *Moreno* v. *Blinn, supra*; *Nelson* v. *Reisner, supra*; *Richfield Oil Corp.* v. *Security-First Nat. Bank, supra*.) Such a right arises when the optionor sells or attempts to sell his interest to another without first offering to sell it to the optionee. (*Moreno* v. *Blinn, supra*; see *Richfield Oil Corp.* v. *Security-First Nat-Bank, supra*; *Nelson* v. *Reisner, supra*.) However, until the optionor decides to sell the optionee is not entitled to specific performance. ▉ Defendants argue that by bringing the present partition action plaintiff has evinced a desire to sell her interest, and that the filing of such an action is tantamount to an offer to sell her interest to them, which offer they have accepted by their answer and cross-complaint. They cite no authority in support of this contention. We are satisfied that a partition suit does not constitute such an offer. The primary purpose of a partition suit is, as the terminology implies, to partition the property, that is, to sever the unity of possession. (Code Civ. Proc., § 752; *Lazzarevich* v. *Lazzarevich, supra*, 39 Cal.2d 48, 50.) ▉ A partition in kind is favored by the law, and a sale will be ordered only when it is necessary to prevent great prejudice to the owners. (*Williams* v. *Wells Fargo Bank*, 56 Cal.App.2d 645, 647 [133 P.2d 73].) ▉ Moreover, when a sale is ordered in a partition suit, it is a sale of the entire interest and not of the individual interests of the owners; it constitutes a joint sale of the property by order of court. (*Vollmer* v. *Wheeler, supra*, 42 Cal.App. 1, at p. 6.) The sale is a "forced sale" in the same sense as would be a mortgage foreclosure, a trustee's sale or a sale under execution. (*Kaupe* v. *Kaupe, supra*, 131 Cal. App.2d 511, 514.)

Defendants also attack several findings of fact on the ground of lack of sufficient evidence to support them. Much of the testimony which is the basis of these findings was the extrinsic evidence that has already been found improperly and

prejudicially admitted. Therefore, in view of our conclusion, the challenged findings fall of their own evidentiary defects.

■ It is also contended by defendants that the trial court erred in its refusal to grant them an accounting for services rendered and moneys advanced. In their cross-complaint they prayed for compensation and reimbursement for advances, expenditures and services rendered on behalf of the property. In view of our holding that it was error for the trial court to partition the property the parties are still coowners and partners. Defendants' allegations for an accounting were predicated upon a dissolution of the relationship and a sale of the property. Accordingly, an accounting is not warranted in the present action.

■ Plaintiff advances the argument that because of the fiduciary relationship between the parties, one partner is prohibited from participating in profit or advantage resulting from the dealings of the parties. This argument neglects the facts of the case. Both parties are experienced in the real estate field. The mere fact that the agreement may have been imprudent is no reason to deny its validity. Similarly, an agreement fairly drawn should not be denied enforcement merely because of the relationship of the parties. The record here does not show any fraud, violation of fiduciary relationship, overreaching, or subterfuge on the part of defendants. Consequently this argument is of no avail to plaintiff.

It is ordered that the judgment signed on November 19, 1962 and filed November 26, 1962, be and it is hereby amended by adding the following paragraph: ''That defendants and cross-complainants take nothing by their cross-complaint against plaintiff and cross-defendant.'' The notice of appeal dated December 21, 1962 and filed December 24, 1962, is declared to be a notice of appeal from the judgment as so amended.

The judgment, as amended, on the cross-complaint is affirmed. Judgment on the complaint is reversed. The purported appeal from the ''Order Fixing Bond on Appeal'' is dismissed. Costs on appeal shall be borne equally by the parties.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied September 10, 1964, and respondent's petition for a hearing by the Supreme Court was denied October 15, 1964. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.