Filed 5/29/25  Smith v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| SARA ROBBEN SMITH et al., | C102068 |
| Petitioners, | (Super. Ct. No. S-CV-0050630) |
| v. | |
| THE SUPERIOR COURT OF PLACER COUNTY, | |
| Respondent. | |
| ARMSTRONG CO ROSEVILLE, LLC, et al., | |
| Real Parties in Interest | |

In this mandamus action, petitioners/plaintiffs Sara Robben Smith and Joanna Mildred Robben (collectively, plaintiffs) challenge an order granting a motion to expunge a lis pendens and award of attorney's fees and costs.

In 2023, plaintiffs and real party in interest Armstrong CO Roseville, LLC (Armstrong) entered into an agreement under which Armstrong agreed to sell a parcel of

1

commercial property (the Property) to plaintiffs. At the time of the agreement, a portion of the Property was leased to Panda Express, Inc. (Panda Express) and plaintiffs agreed to purchase the Property subject to that lease. The lease contained a provision granting Panda Express a right of first refusal to purchase the Property on the same terms as any bona fide third-party offer. However, Armstrong entered into its agreement with plaintiffs without giving Panda Express the notice required by the contract or an opportunity to match plaintiffs' offer. Armstrong then attempted to correct this "oversight" by honoring Panda Express's right of first refusal after the fact. When Panda Express elected to exercise its option, Armstrong chose to move forward with the sale to Panda Express and terminate its agreement with plaintiffs.

Plaintiffs filed a lawsuit and recorded a lis pendens to protect their rights under the agreement with Armstrong. In response, Armstrong filed a motion to expunge the lis pendens. The trial court granted Armstrong's motion, finding that plaintiffs did not present sufficient evidence to establish a "superior right to purchase the property" and therefore failed to prove the probable validity of their claim for specific performance. The court awarded Armstrong $29,166 in attorney's fees and costs for prevailing on the motion.

Plaintiffs filed this writ proceeding to challenge the trial court's ruling. Plaintiffs contend the trial court erred in finding that Panda Express has a superior right to purchase the Property because the undisputed facts show: (1) Armstrong breached its agreement with plaintiffs, entitling them to specific performance; (2) Panda Express forfeited whatever rights it had under the right of first refusal; and (3) the right of first refusal is not enforceable against plaintiffs because they had no notice of it. Plaintiffs also argue that the trial court abused its discretion in awarding attorney's fees and costs to Armstrong.

2

We agree only that the trial court abused its discretion in awarding attorney's fees and costs to Armstrong. Accordingly, we will issue a writ of mandate requiring the trial court to vacate that portion of its order, and deny the petition in all other respects.

BACKGROUND FACTS AND PROCEDURE

Armstrong is the owner of the Property located at 1501 Blue Oaks Boulevard, in Roseville, California. The Property has two tenants: Dog Haus Restaurant and Panda Express.

Armstrong and Panda Express entered into their lease agreement (the Panda Express Lease) in January 2019. The Panda Express Lease contains a right of first refusal provision giving Panda Express the right to purchase the Property on the same terms as any bona fide third-party offer. It states:

"If [Armstrong] receives a bona fide offer from a third party ('Offer') at any time during the Term for the acquisition of fee simple title to all of [Armstrong's] interest in the legal parcel upon which the Premises is a part ('Right of First Refusal Property') and [Armstrong] wishes to accept the Offer, [Armstrong] shall, subject to the limitations provided hereinafter, give [Panda Express] written notice thereof ('Right of First Refusal Notice.') The Right of First Refusal Notice shall include the acquisition price, all other consideration to be paid, and all other material terms of the Offer. Subject to the limitations set forth hereinafter, [Panda Express] shall, for a period of fifteen (15) days from the date of its receipt of the Right of First Refusal Notice, have the right ('Right of First Refusal') to acquire the Right of First Refusal Property on the same terms and conditions as set forth in the Offer. If [Panda Express] elects to acquire the Right of First Refusal Property by exercising its rights provided in . . . the Lease, it shall so notify [Armstrong] within the above stated fifteen (15) day period. If [Panda Express] does not respond to [Armstrong] in writing within such fifteen (15) day period, [Panda Express] shall be deemed to have relinquished its Right of First Refusal to acquire the Right of First Refusal Property pursuant to such Offer[, and] . . . [Armstrong] shall be free to

3

accept such Offer and transfer the Right of First Refusal Property to any party on terms materially consistent with such Offer.  If [Panda Express] exercises its Right of First Refusal, [Armstrong's] and [Panda Express's] rights and obligations for the Right of First Refusal Property shall be upon the same terms and conditions as set forth in the Offer as to be embodied in a written agreement . . . [which] [Armstrong] and [Panda Express] shall execute and deliver . . . with diligent and good faith efforts promptly after [Panda Express's] exercise of its Right of First Refusal."  (Boldface omitted.)

In late 2022, almost four years after the Panda Express Lease was signed, Armstrong decided to list the Property for sale.  In connection with the listing, Armstrong's real estate broker, Cushman & Wakefield, Inc., prepared an offering memorandum, which was made available for download online to interested parties.  The offering memorandum expressly referred to Panda Express's right of first refusal.

In January 2023, plaintiffs submitted a letter of intent to purchase the Property from Armstrong.  A couple of months later, in March 2023, plaintiffs and Armstrong executed a purchase and sale agreement (the Agreement), formalizing plaintiffs' agreement to buy the Property, along with Armstrong's interests in the existing leases, for $4,350,000.  In the Agreement, Armstrong represented to plaintiffs that (1) it had "full power and authority" to sell the Property to plaintiffs, and that (2) the transaction would not constitute a default under any lease.

The Agreement included a 45-day "due diligence" period for plaintiffs to review and investigate matters related to their decision to purchase the Property, including the Panda Express Lease.  The due diligence clause affords plaintiffs the right to terminate the Agreement and receive a full refund of their deposit for virtually any reason.

During the due diligence period, Armstrong provided a copy of the Panda Express Lease to plaintiffs.  Plaintiffs claim that prior to signing the Agreement they did not have access to the Panda Express Lease and were otherwise unaware of the right of first refusal.

4

On April 30, 2023, approximately five days before the end of the initial due diligence period,[1] plaintiffs asked Armstrong to confirm that it had complied with the right of first refusal provision in the Panda Express Lease. Until that point, Armstrong claims it had forgotten about the right of first refusal.

On May 2, 2023, Armstrong sent Panda Express a letter, dated May 1, 2023, (May 2 notice) giving notice that the right of first refusal had been triggered. However, rather than inform Panda Express that it already had a contract to sell the Property, Armstrong told Panda Express only that it had received a "bona fide offer" to sell the Property. Armstrong attached a copy of an unsigned letter of intent purportedly describing the terms of that offer.

It is undisputed that the letter of intent attached to Armstrong's May 2 notice did not accurately reflect the terms of plaintiffs' Agreement. For example, the letter of intent stated the purchase price was $4,250,000, which is $100,000 *less* than the price stated in the Agreement. However, according to Armstrong, a corrected letter of intent was sent to Panda Express on May 13, 2023.

On May 15, 2023, Panda Express delivered a notice of its election to exercise its right of first refusal. Plaintiffs first learned of Panda Express's decision on May 23, 2023. By that date, plaintiffs already had made two separate deposits of $100,000 toward the purchase price under the Agreement.

On May 25, 2023, plaintiffs sent Armstrong a written notice of default. The notice stated that Armstrong was in material default of the Agreement for: (1) making false representations and warranties in the Agreement; (2) failing and refusing to complete the sale of the Property to plaintiffs; and (3) repudiating the Agreement and moving forward

---

[1] Armstrong and plaintiffs subsequently agreed to extend the due diligence period through May 19, 2023.

with a prospective sale of the Property to Panda Express. Plaintiffs demanded that Armstrong cure the defaults and proceed to closing under the Agreement.

On May 26, 2023, Armstrong's counsel emailed Panda Express a copy of the proposed agreement for its purchase of the Property (the Panda Express Agreement). The email stated, "[t]he current buyer executed this document, so if Panda [Express] proceeds with the exercise of its [right of first refusal], my client would expect Panda [Express] to accept the same terms and sign the same document." The email also stated that because "the other buyer is still interested in closing," Armstrong "need[s] to know if Panda [Express] intends to pursue the acquisition through closing."

On May 30, 2023, Panda Express's counsel responded. Panda Express's counsel inquired as to why Armstrong already had a fully executed agreement with another buyer. In addition, Panda Express's counsel notified Armstrong that she had "changed the purchase price" in the proposed agreement "from $4,350,000 to $4,250,000 in reference to the [letter of intent] attached to the [right of first refusal notice]."

On June 1, 2023, Armstrong's counsel replied that "the current buyer executed its purchase agreement subject to the terms of the [Panda Express Lease], which contained the [right of first refusal]," and that "[t]he current buyer knew about the [right of first refusal] prior to the expiration of [the] due diligence period and understood Panda Express had at no point waived it." With respect to the purchase price, Armstrong's counsel confirmed that the purchase price was $4,350,000, as reflected in "the excerpts from the [Agreement]. . . we sent you on May 15." Counsel also explained that the price discrepancy in its May 2 notice was caused by "scrubbing software" that unintentionally removed the electronically inserted changes to the attached letter of intent.

In an email from Panda Express's counsel dated June 12, 2023, counsel confirmed Panda Express's intention to purchase the Property, stating: "[A]fter considering the circumstances at hand, our management has given final approval to proceed with the

[Panda Express Agreement]." Around the same time, Panda Express assigned its right of first refusal to an affiliate, CFT NV Developments, LLC (CFT).[2]

Plaintiffs filed their lawsuit against Armstrong in June 2023, alleging causes of action for specific performance, breach of contract, declaratory relief, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, and promissory fraud. In October 2023, plaintiffs filed a first amended complaint alleging the same causes of action. That same month, Panda Express sought and obtained leave to file a complaint in intervention against plaintiffs and Armstrong.

On December 5, 2023, Armstrong sent plaintiffs written notice that it was terminating their Agreement based on Panda Express's complaint in intervention.

On June 21, 2023, plaintiffs recorded a notice of lis pendens against the Property to protect their rights under the Agreement. Plaintiffs recorded an amended notice of lis pendens on April 12, 2024.

In May 2024, Armstrong filed a motion to expunge plaintiffs' lis pendens. Plaintiffs opposed the motion and filed evidentiary objections. After a hearing, the trial court overruled plaintiffs' evidentiary objections in their entirety and granted Armstrong's motion to expunge. The court found that plaintiffs did not carry their burden of showing the "probable validity" of their claim for specific performance. The court awarded Armstrong attorney's fees and costs in the amount of $29,166 under Code of Civil Procedure section 405.38.[3]

Plaintiffs seek a peremptory writ of mandate compelling the trial court to vacate its order and enter a new order denying the motion to expunge the lis pendens and awarding them attorney's fees and costs.

---

[2]     For clarity, we refer to Panda Express and CFT collectively as Panda Express.

[3]     Undesignated section references are to the Code of Civil Procedure.

DISCUSSION

I

*Expungement of Lis Pendens*

Plaintiffs contend the trial court erred in granting Armstrong's motion to expunge the lis pendens because the "undisputed facts" establish the "probable validity" of their claim for specific performance. We conclude the trial court properly found plaintiffs failed to carry their burden.

A.      *Background Legal Principles and Standard of Review*

A party who asserts a claim to real property may record a notice of pendency of action (or lis pendens), which gives constructive notice to prospective purchasers, encumbrancers, and transferees that an action has been filed affecting title or right to possession of the property. (*Amalgamated Bank v. Superior Court of Sacramento County* (2007) 149 Cal.App.4th 1003, 1011; § 405.20.) The lis pendens "acts as a cloud against the property, effectively preventing sale or encumbrance until the litigation is resolved or the lis pendens is expunged." (*Amalgamated Bank,* at p. 1011.)

Once a lis pendens has been recorded, any party with an interest in the property may move to expunge it. (§ 405.30.) The court must order expungement if it finds that the pleading on which the lis pendens is based does not contain a "real property claim" (§ 405.31) or that the real property claim lacks "probable validity" (§ 405.32). (*J&A Mash & Barrel, LLC v. Superior Court of Fresno County* (2022) 74 Cal.App.5th 1, 16 (*J&A Mash & Barrel*).) The claimant who recorded the lis pendens has the burden of proving (by a preponderance of the evidence) that the complaint contains a real property claim and that the claim has probable validity. (§ 405.30.)

Once an order granting expungement has been issued, the exclusive means for challenging that order is a petition for writ of mandate. (§ 405.39.) In reviewing such an order, we apply the substantial evidence test to the court's express and implied findings of fact. (*J&A Mash & Barrel, supra*, 74 Cal.App.5th at p. 17.) Under that standard, we

8

must view the evidence in the light most favorable to the trial court's ruling, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) To the extent the court's ruling raises legal questions, such as the interpretation of a statute or the application of law to undisputed facts, our review is de novo. (*J&A Mash & Barrel,* at p. 17.)

B.     *Analysis*

As discussed, a lis pendens "shall" be expunged if the underlying action does not contain a real property claim or if the real property claim lacks probable validity. (*J&A Mash & Barrel, supra*, 74 Cal.App.5th at p. 22.) There is no dispute here that plaintiffs' claim for specific performance is a "real property claim." (*BGJ Associates v. Superior Court of Los Angeles* (1999) 75 Cal.App.4th 952, 967; accord, *De Martini v. Superior Court of San Mateo County* (2024) 98 Cal.App.5th 1269, 1278.) The trial court did not find otherwise. Instead, it ordered expungement based on a finding that plaintiffs failed to prove the "probable validity" of their specific performance claim. The court found that plaintiffs failed to present sufficient evidence to establish, by a preponderance of the evidence, that they "had a superior right to purchase the property over [Panda Express]," which had a preemptive right of first refusal.

Plaintiffs contend the trial court erred because the undisputed facts establish the probable validity of their specific performance claim. They argue that the undisputed facts show Armstrong breached their contract by "making false representations and warranties in that Agreement, failing and refusing to perform under the Agreement, and moving forward with a prospective sale of the Property to Panda Express." Further, because it is presumed that monetary damages are an inadequate remedy for breach of an agreement to transfer real property (Civ. Code, § 3387; *Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472-474), plaintiffs contend they are entitled to specific performance.

9

Plaintiffs also argue the undisputed facts establish that they have a "superior right" to purchase the Property over Panda Express.

They first contend that Panda Express's right of first refusal was void and unenforceable because Armstrong and Panda Express failed to strictly comply with its terms. In particular, because the original May 2 notice contained an inaccurate and incomplete letter of intent, plaintiffs contend the notice was defective, and Panda Express's purported exercise of its right to purchase the Property was void. Plaintiffs argue that it was not until May 26, 2023, that Armstrong provided a notice adequate to trigger the right of first refusal, and it was not until June 12—more than 15 days later—that Panda Express properly exercised its right of first refusal. Because Armstrong and Panda Express failed to "strictly" comply with its terms, plaintiffs contend the right of first refusal has been forfeited.

Second, plaintiffs argue they did not have adequate notice of the right of first refusal provision before entering into the Agreement, rendering the provision unenforceable against them. Plaintiffs emphasize that Armstrong never advised them that the Panda Express Lease had a right of first refusal provision and that they learned about the provision only after entering into the Agreement. The fact that the Agreement references the Panda Express Lease is of no consequence, they argue, because they did not have access to the Panda Express Lease until after the Agreement was signed and because Armstrong expressly represented to them that the sale would not cause a default under the lease. Plaintiffs further dispute that knowledge of the right of first refusal may be imputed to them based on "incompetent" evidence, erroneously admitted over their objection, that plaintiffs' father (or father-in-law) allegedly downloaded the offering memorandum before they signed the Agreement.

We conclude the trial court properly found that plaintiffs failed to establish the probable validity of their claim for specific performance. We explain.

10

To begin, we note that specific performance is not available as a matter of right, but rather is a remedy subject to established principles of equity. (*Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 409.) "Accordingly, specific performance has been denied where the result of enforcement would be inequitable, or unjust as to an innocent third person—for example, where specific performance would result in compelling a defendant to violate a prior contract with such third person." (*Casady v. Modern Metal Spinning & Manufacturing Co.* (1961) 188 Cal.App.2d 728, 731; see Murray, Jr., Murray on Contracts (5th ed. 2011) Remedies For Breach Of Contract, § 128; 1 Murray and Hogue, Corbin on California Contracts (2025) Reasons For Denying Specific Enforcement, § 64.01; Rest.2d Contracts, (1981) Remedies, § 364.) Here, there was a prior contract with a third person, in the form of the right of first refusal.

A right of first refusal, also called a preemptive right, is a grant from a landowner that gives the grantee (holder) the right to purchase property if the owner elects to sell. (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1522; *Hartzheim v. Valley Land & Cattle Co.* (2007) 153 Cal.App.4th 383, 389.) Although the particular circumstances that give rise to the right depend on the terms of the parties' agreement, (*Hartzheim,* at p. 389) a right of first refusal normally is triggered when the owner (grantor of the right) decides to sell the property and receives a bona fide purchase offer from a third party. (*Bill Signs Trucking, LLC,* at p. 1523.) The owner then must present the offer to the holder of the right, who will have a limited period of time to either match or reject the offer. (*Ibid.*)

Normally, a right of first refusal is enforceable against both the owner who granted the right to purchase and against any third-party purchaser who acquired the property with notice of the holder's right. (*Campbell v. Alger* (1999) 71 Cal.App.4th 200, 207; accord, *Juarez v. Ward* (2023) 88 Cal.App.5th 730, 741; *J&A Mash & Barrel, supra,* 74 Cal.App.5th at p. 34; *Hartzheim v. Valley Land & Cattle Co., supra,* 153 Cal.App.4th

11

at p. 389; *Maron v. Howard* (1968) 258 Cal.App.2d 473, 476-478, 484, 488, 490; *Moreno v. Blinn* (1947) 81 Cal.App.2d 852, 853-856.)

A bona fide purchaser for value who acquires the property without actual or constructive notice of the holder's right may take the property free of such right. (*Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 107; *Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 364; see *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251-1252.)  In contrast, a person who purchases property *with* actual or constructive notice of a right of first refusal takes the property subject to that right.  (*Claremont Terrace Homeowners' Assn. v. United States* (1983) 146 Cal.App.3d 398, 408-409; *Maron v. Howard, supra*, 258 Cal.App.2d at pp. 478, 488, 490; *Moreno v. Blinn, supra*, 81 Cal.App.2d at p. 855; accord, *Carl M. Archer Trust No. Three v. Tregellas* (Tex. 2018) 566 S.W.3d 281, 287; *Stone v. W. E. Aubuchon Co.* (1990) 29 Mass.App.Ct. 523, 526.)

Here, plaintiffs do not dispute that the Panda Express Lease granted Panda Express a right of first refusal.  They argue only that Panda Express failed to validly and timely exercise the option, forfeiting any right to purchase the Property.  The trial court implicitly found to the contrary. (See *Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 197.)  We conclude that substantial evidence supports the court's finding.

Although Armstrong's initial May 2 notice to Panda Express may not have strictly complied with the terms of the right of first refusal—e.g., by misstating the purchase price—there is a basis to infer Panda Express received a compliant notice before exercising its right of first refusal.  In particular, the declaration of Kevin Parker states that a corrected letter of intent was sent to Panda Express on May 13, 2023, two days before Panda Express exercised its right of refusal on May 15, 2023.  In addition, an email from Armstrong's counsel suggests that "excerpts from the purchase agreement," which included the purchase price of $4,350,000, were delivered to Panda Express on May 15, 2023.

We acknowledge that the May 30, 2023, email from Panda Express's counsel, referencing the original (and flawed) letter of intent, could support a different finding. But the law is settled, "[i]f a finding is supported by substantial evidence, we may not disregard or overturn it merely because a contrary finding would have been equally or more reasonable." (*Family Health Centers of San Diego v. State Dept. of Health Care Services* (2021) 71 Cal.App.5th 88, 97; accord, *In re Alexandria P.* (2016) 1 Cal.App.5th 331, 355.) Here, there is sufficient evidence to support a finding that Panda Express timely and validly exercised its right of first refusal within 15 days of receiving notice of the offer.

Moreover, even if we were to agree with plaintiffs that Panda Express did not receive a compliant notice until May 26, 2023, this would not change our conclusion. When the holder of a right of first refusal is prevented from exercising that right by reason of a defective notice, the holder's right is not extinguished; the time for enforcing the right is simply tolled until the holder receives the required notice. (See *J&A Mash & Barrel, supra*, 74 Cal.App.5th at p. 41; *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, , 317; see also *Town of Sudbury v. Scott* (2003) 439 Mass. 288, 297.) Thus, if Panda Express did not receive a compliant notice until May 26, 2023, its 15-day period to respond did not start to run until that date either. This is significant because Panda Express timely responded to Armstrong four days later, on May 30, 2023, confirming that it was "rightfully exercising its [right of first refusal] under the Lease." In our view, nothing more was required.

Moreover, because the 15-day time limitation was solely for the benefit of Armstrong as the grantor of the right, Armstrong had the power to waive strict compliance with the time limitation. (*Rollins v. Stokes* (1981) 123 Cal.App.3d 701, 713; *Sabo v. Fasano* (1984) 154 Cal.App.3d 502, 505; *Collins v. Marvel Land Co.* (1970) 13 Cal.App.3d 34, 40.) Thus, regardless of whether Panda Express exercised its right of first refusal on May 15, May 30, or June 12, 2023, plaintiffs failed to establish the

13

probable validity of their claim that Panda Express forfeited its preemptive right to purchase the Property.

We turn now to plaintiffs' argument that the right of first refusal cannot be enforced against them because they lacked adequate notice of it. As explained, *ante*, the holder of a right of first refusal has a preferential right of purchase that is enforceable against third persons who acquire the property with actual or constructive notice of that right. Plaintiffs argue there is no competent evidence showing that they had notice of the right at the time they entered the Agreement with Armstrong. They argue the trial court abused its discretion in overruling evidentiary objections to Parker's declaration that plaintiffs' father (or father-in-law) downloaded an offering memorandum prior to plaintiffs entering the Agreement.

We agree that the trial court's evidentiary ruling was an abuse of discretion. The declaration provides no basis for finding that Parker, as the managing member of Armstrong, had the personal knowledge to authenticate an email verification from Cushman & Wakefield, Inc.'s online database. Parker's declaration also fails to demonstrate the requisite personal knowledge to support the statement, made on information and belief, that "Robert Robben" is the father or the father-in-law of one of the plaintiffs and that he "was acting as a principal in the purchase and sale transaction" when he allegedly downloaded the offering memorandum.

We disagree, however, that this evidence "provided the sole basis" for finding plaintiffs had notice of the right of first refusal. Even if plaintiffs did not have *actual* notice of the right of first refusal before entering into the Agreement, they had *constructive* notice of it because the Agreement was subject to the Panda Express Lease and included a 45-day due diligence period for plaintiffs to investigate it. Because a reasonably prudent purchaser of commercial real estate in plaintiffs' position would have read the Panda Express Lease, the fact that Armstrong represented the transaction would not cause a default does not prevent plaintiffs from being charged with constructive

14

notice of the lease terms. (*Vasquez v. LBS Financial Credit Union, supra*, 52 Cal.App.5th at p. 108 [a purchaser has constructive notice of a fact where he or she has knowledge of circumstances which would put a prudent person upon inquiry that, in all probability, would have disclosed that fact].)

In addition, plaintiffs indisputably obtained *actual* notice of the right of first refusal during the Agreement's due diligence period. Because the Agreement allowed plaintiffs to terminate the deal (without penalty) for essentially any reason during that period, plaintiffs' knowledge of the right of first refusal was sufficient to defeat any claim of bona fide purchaser status.

In sum, there is ample evidence to support a finding that plaintiffs had notice of the right of first refusal and therefore could not claim the protection of being bona fide purchasers for value. (*Vasquez v. LBS Financial Credit Union, supra*, 52 Cal.App.5th at pp. 107-108) Accordingly, the trial court properly found that plaintiffs failed to establish the probable validity of their claim for specific performance.

II

*Attorney's Fee Award*

Aside from challenging the trial court's order on the merits, plaintiffs also argue that the trial court erred by awarding attorney's fees and costs to Armstrong under section 405.38. We agree.

Under section 405.38, a prevailing party on a motion to expunge a lis pendens is entitled to recover reasonable attorney's fees and costs "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." (§ 405.38.) The term " '[s]ubstantially justified' " has been construed to mean " 'not necessarily a prevailing position' but one which is ' "justified to a degree that would satisfy a reasonable person" or . . . has a " 'reasonable basis both in law and in fact.' " ' " (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1188-1189.) Where "reasonable minds could . . . differ," a party's

position will be deemed to be substantially justified. (*Id.* at p. 1189; accord, *Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 870.) We review the trial court's decision for abuse of discretion. (*Lennane,* at p. 1188; *Crews v. Willows Unified School Dist.* (2013) 217 Cal.App.4th 1368, 1379.)

Here, we conclude that the award of attorney's fees and costs to Armstrong constitutes an abuse of discretion. Armstrong is unquestionably the party that caused this dispute. Whether Armstrong "deliberately misled" plaintiffs or simply made an "honest mistake," Armstrong agreed to sell the Property to plaintiffs in contravention of Panda Express's right of first refusal. Armstrong then attempted to correct this misstep by belatedly honoring Panda Express's right of first refusal, resulting in two agreements to sell the same property to two different buyers. Under the applicable law, on this record the facts compel a conclusion that plaintiffs acted with substantial justification in recording the lis pendens and opposing Armstrong's motion and that an award of fees and costs to Armstrong would be unjust. Accordingly, the order granting an award of attorney's fees and costs must be reversed.

## DISPOSITION

As explained in the body of this opinion, the order granting expungement of lis pendens was proper, but the award of attorney's fees and costs was not. Accordingly, let a peremptory writ of mandate issue directing the Superior Court of Placer County to vacate that portion of its order awarding attorney's fees and costs to Armstrong, and instead enter an order denying such award. Plaintiffs shall recover their costs in this writ proceeding. (Cal. Rules of Court, rules 8.493, 8.278(a)(1) & (3).)

           \s_____,
           Krause, Acting P. J.

We concur:

\s_____,
Boulware Eurie, J.

\s_____,
Wiseman, J.*

_____

\*    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.